FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

Gabriel Francis Toro, USM 66824-050                    COMPLAINT

           v.                    Civil Action No. _____
                                    (To be supplied by the Clerk of the Court)

Dr. Jeffrey Asao, Doctor of Dental Medicine,
  FCI Fort Dix, New Jersey, March-May 2018 (D1);

Dr. Robert Cabanes, Doctor of Dental Surgery,
  FCI Fort Dix, New Jersey, March-May 2018 (D2);

Dr. Nicoletta Turner-Foster, Doctor of Medicine,
  FCI Fort Dix, New Jersey, March-May 2018 (D3);

Dr. Bill Bucur, Doctor of Medicine,
  FCI Fort Dix, New Jersey, March-May 2018 (D4);

Jae Doe A, Clinical Director,
  Department of Health Services,
  FCI Fort Dix, New Jersey, March-May 2018 (D5);

Jae Doe B, Chief Dental Officer,
  FCI Fort Dix, New Jersey, March-May 2018 (D6).

Jae Doe C, Health Services Administrator
  FCI Fort Dix, New Jersey, March-May 2018 (D7);

Smith, Associate Warden [Operations or Programs]
  FCI Fort Dix, New Jersey, 2017-2018 (D8);

David Ortiz, Warden,
  FCI Fort Dix, New Jersey, 2017-2018 (D9);

Charles Lee, Unit Counselor,
  FCI Fort Dix, New Jersey, 2017-2018 (D10);

L. Moore, Case Manager,
  FCI Fort Dix, New Jersey, 2017-2018 (D11);

Jae Doe D, Unit Manager Supervising Lee and Moore,
  FCI Fort Dix, New Jersey, 2017-2018 (D12);

Jae Doe F, Captain,

FCI Fort Dix, New Jersey, 2017-2018 (D13);

Jae Doe G, SHU Lieutenant,
   FCI Fort Dix, New Jersey, March-May 2018 (D14):

Jae Doe H, CMC Coordinator Supervising L. Moore 2017-2018,
   FCI Fort Dix, New Jersey, 2017-2018 (D15);

Jae Doe I, Segregation Review Official,
   FCI Fort Dix, New Jersey, March-May 2018 (D16);

J. Rangone, Doctor of Medicine,
   FCI Fort Dix, New Jersey, 2017-2018 (D17);

Dr. Gomez, Psychologist,
   FCI Fort Dix, New Jersey, 2017-2018 (D18);

Jae Doe J, Chief Psychologist,
   FCI Fort Dix, New Jersey, 2017-2018 (D19);

Jae Doe K, Correctional Officer(s) assigned to my unit on March 7- 8, 2018 for the early shift (11 pm to 6 am), the day shift (6 am to 4 pm), and the evening shift (4 pm to 11 pm), who performed the 12:00 midnight, 3:00 am, 5:00 am, 4:00 pm (stand-up), and 9:30 pm (stand-up) counts (D20);

and

The United States federal government and its entities, U.S. Bureau of Prisons Central Office, Northeast Regional Office and FCI Fort Dix (D21),

(Defendants in this action).

## QUESTIONS TO BE ANSWERED

1a.   Jurisdiction is asserted pursuant to

   **XX**   Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and 28 U.S.C. § 1331

List below different or additional statutes of jurisdiction:

The Federal Tort Claims Act (28 U.S.C.A. § 1346); § 504 of the Rehabilitation Act of 1973, 87 Stat. 394, as amended (29 U.S.C. § 794); U.S. Constitution, Amendments I, V and VIII; the Constitution of the State of New Jersey, including Article I, Sections 1, 6, 12, 18; New Jersey General And Permanent Statutes Relative to medical malpractice.

1b.    Indicate whether you are a prisoner or other confined person as follows:  __XX__ Convicted and sentenced federal prisoner

2.     Previously Dismissed Federal Civil Actions or Appeals:  NONE

3.     Place of Present Confinement:
       Federal Correction Institution Loretto
       PO Box 1000
       Cresson, PA 16630

4.     Parties:

a.     Name of plaintiff: Gabriel Francis Toro
       Address:  Gabriel Toro, USM 66824-050, Federal Correction
                 Institution   Loretto, PO Box 1000, Cresson, PA 16630
       Inmate#: 66824-050

b.     LISTED DEFENDANTS:

First defendant (D1):  Dr. Jeffrey Asao,
Official position:  Doctor of Dental Medicine
Place of employment: FCI Fort Dix, New Jersey
How is this person involved in the case: D1 was my treating physician after my jaw was broken in the March 8, 2018 assault and failed to ensure that my emergent medical need was immediately and properly treated. He delayed surgery for my broken jaw to wait for the contract oral surgeon to return from out of town, instead of sending me back to the hospital for immediate care or finding another oral surgeon, in violation of BOP policies and medical ethics. Nor did Dr. Jeffrey Asao report those who were failing to provide my medical care, though he had an obligation to do so.

Second defendant (D2): Dr. Robert Cabanes,
Official position: Doctor of Dental Surgery
Place of employment: FCI Fort Dix, New Jersey
Involvement in the case: D2 was my treating physician after my jaw was broken in the March 8, 2018 assault and failed to ensure that my emergent medical need was immediately and properly treated. He delayed surgery for my broken jaw to wait for the contract oral surgeon to return from out of town, instead of sending me back to the hospital for immediate care or

finding another oral surgeon, in violation of law, BOP policies and medical ethics. Nor did Dr. Robert Cabanes report those who were failing to provide my medical care, though he had an obligation to do so.

Third defendant (D3): Dr. Nicoletta Turner-Foster
Official position: Doctor of Medicine
Place of employment: FCI Fort Dix, New Jersey
Involvement in the case: D3 was my treating physician after my jaw was broken in the March 8, 2018 assault and failed to ensure that my emergent medical need was immediately and properly treated. She participated in the delay of surgery for my broken jaw, waiting for the contract oral surgeon to return from out of town, instead of sending me back to the hospital for immediate care or finding another oral surgeon, in violation of law, BOP policies and medical ethics. Nor did Dr. Nicoletta Turner-Foster report those who were failing to provide my medical care, though she had an obligation to do so.

Fourth defendant (D4): Dr. Bill Bucur
Official position: Doctor of Medicine
Place of employment: FCI Fort Dix, New Jersey
Involvement in the case: D4 was my treating physician after my jaw was broken in the March 8, 2018 assault and failed to ensure that my emergent medical need was immediately and properly treated. He participated in the delay of surgery for my broken jaw, waiting for the contract oral surgeon to return from out of town, instead of sending me back to the hospital for immediate care or finding another oral surgeon, in violation of law, BOP policies and medical ethics.  Nor did Dr. Bill Bucur report those who were failing to provide my medical care, though he had an obligation to do so.

Fifth Defendant (D5) Jae Doe A
Official position: Clinical Director:
Place of employment: FCI Fort Dix, New Jersey
Involvement in the case: The clinical director has immediate responsibility to ensure that all inmates under care receive proper medical treatment and they have first-hand knowledge of acute individual cases and direct and supervise all medical providers. Acute individual cases are reported to the Clinical Director directly. Jae Doe A failed to ensure that my emergent

medical need was immediately and properly treated. Jae Doe A had active, first-hand knowledge that my surgery was being delayed and acquiesced in that delay, in violation of law, BOP policies and medical ethics. Jae Doe A had authority to arrange emergency medical treatment for me but did not do so. Nor did Jae Doe A report those who were failing to provide medical treatment to me, though ethically required to do so.

Sixth Defendant (D6): Jae Doe B
Official position: Chief Dental Officer
Place of employment: FCI Fort Dix, New Jersey
Involvement in the case: The Chief Dental Officer has immediate responsibility to ensure that all inmates under care receive proper dental treatment and they have first-hand knowledge of emergent individual cases and direct and supervise all dental providers, particularly in emergent cases. Jae Doe B failed to ensure that my emergent medical need was immediately and properly treated, even though it was his responsibility to do so. Jae Doe B had active knowledge that my medical treatment was being delayed and acquiesced in that delay, in violation of law, BOP policies and medical ethics. Jae Doe B had authority to arrange emergency medical treatment for me but did not do so. Nor did Jae Doe B and to report those who were failing to provide it, though he had an obligation to do so.

Seventh Defendant (D7): Jae Doe C
Official position: Health Services Administrator
Place of employment: FCI Fort Dix, New Jersey
Involvement in the case:  The Health Health System Administrator (HSA) is the head for the health services department at a federal prison. Her duties include planning, directing, and managing the department, including budgetary and fiscal matters, patient care, and laboratory and pharmacy operations.  She and the Clinical Director integrates administrative management functions with clinical programs, including the emergency transit of patients when needed.  The HSA and CD are the direct lines of communication to the warden. Jae Doe C failed to ensure that my emergent medical need was immediately and properly treated, even though it was his responsibility to do so. Jae Doe C had active knowledge that my medical treatment was being delayed and acquiesced in that delay, in violation of law, BOP policies and medical ethics. Jae Doe C had authority to arrange

emergency medical treatment for me but did not do so.  Nor did Jae Doe C report those who were failing to provide it, though he had an obligation to do so

Eighth Defendant (D8): Smith
Official position: Associate Warden
Place of employment: FCI Fort Dix, New Jersey
Involvement in the case:  Associate Warden Smith directed the work of FCI Ft. Dix organizational units, and supervised department heads, including Health Services HSA and CD.  Associate Warden Smith consulted regularly with those individuals and with the Captain, and other custody officers, regarding emergency inmate medical cases. An Associate Warden is responsible for control and supervision of programs, operations, medical, mental health, clinical programs, custody, transportation, industries and education. Associate Warden Smith was directly advised by me of the increasing victimization faced by sex offenders at Ft. Dix but failed to take action to redress that situation, even though it was his job duty to do so. Associate Warden Smith was directly advised by me that I also faced this increased threat but failed to take any steps to protect me although it was his obligation to do so.  Under normal BOP procedures, Associate Warden Smith was or should have been aware of the March 8 assault upon me and my resultant injuries.  Associate Warden Smith also toured the SHU regularly between March 9 and March 26 and directly observed me, and would therefore have been aware I was not receiving medical treatment for my fractured jaw.  In spite of this knowledge, Associate Warden Smith did not ensure that I received this medical treatment in a timely fashion, though he had the ability to do so.

Ninth Defendant (D9): David Ortiz
Official position: Warden
Place of employment: FCI Fort Dix, New Jersey
Involvement in the case:  Warden Ortiz was responsible for the running of FCI Ft. Dix commensurate with his role as Chief Executive Officer.  This including supervising and ensuring the safety of the inmate population and ensuring they receive adequate medical treatment.  Normal BOP procedures ensure that emergency situations are reported to the Warden.  As such the Warden would or should have been aware of the increased victimization

faced by sex offender population at FCI Ft. Dix during the period referenced in this complaint, yet failed to take any remedial steps to ensure the safety of that population, despite his obligation to do so.  Under normal BOP procedures, Warden Ortiz also would or should have been aware of the assault I experienced and my need for immediate medical treatment. Warden Ortiz also aware because my family members directly communicated to him. Warden Ortiz made regular SHU visits where he physiically observed me and was aware that I was not receiving this treatment. He failed to take remedial action though it was his obligation to do so and he had the ability to do so.

Tenth Defendant (D10): L. Moore
Official position: Unit Counselor
Place of employment: FCI Fort Dix, New Jersey
Involvement in the case:  L. Moore was my case manager at FCI Ft. Dix.  He would or should have been aware, in the course of normal BOP unit management operations, that I was in fear of my safety and had been experiencing harassment, and felt increasingly unsafe in the dormitory to which I was assigned.  Moore was also aware because my family members directly communicated these fears to him. L. Moore inspected my room on the morning after my assault, physically observed me but failed to investigate or to ensure I received medical treatment. L. Moore was also aware, because of his required, frequent SHU visits, that I was not receiving necessary, visibly obvious medical treatment.  He failed to utilize procedures available to him to ensure I received such treatment and to report those who were failing to provide it, though he had an obligation to do so.

Eleventh Defendant (D11): C. Lee
Official position: Case Manager
Place of employment: FCI Fort Dix, New Jersey
Involvement in the case" C. Lee was my case manager during the events alleged in my complaint.  I directly reported to him that I felt unsafe in my assigned dormitory room and feared for my safety.  C. Lee failed to take remedial action though he was required to do so.  C. Lee inspected my room on the morning after my assault, physically observed me but failed to investigate or to ensure I received medical treatment  C. Lee was also aware, because of his required, frequent SHU visits, that I was not receiving

necessary, visibly obvious medical treatment.  He failed to utilize procedures available to him to ensure I received such treatment and to report those who were failing to provide it, though he had an obligation to do so.

Twelfth Defendant (D12): Jae Doe D
Official position: Unit Manager
Place of employment: FCI Fort Dix, New Jersey
Involvement in the case:  Unit Manager Jae Doe D, who supervised my unit team during the 2017-2018 time period relevant herein, would or should have been aware, in the course of normal BOP unit management operations, that I was in fear of my safety and had been experiencing harassment, and felt increasingly unsafe in the dormitory to which I was assigned.  Jae Doe D was also aware because my family members directly communicated these fears to his unit team staff.  Jae Doe D was also aware, because of his required, frequent SHU visits, that I was not receiving necessary, visibly obvious medical treatment.  He failed to utilize procedures available to him to ensure I received such treatment and to report those who were failing to provide it, though he had an obligation to do so.

Thirteenth Defendant (D13):  Jae Doe F
Official position: Captain at FCI Ft. Dix during the 2017-2018
Place of employment: FCI Fort Dix, New Jersey
Involvement in the case: Jae Doe F was captain including during the time period relevant herein. Jae Doe F was directly responsible for ensuring the physical safety of inmates at FCI Ft. Dix, and directly supervised custody officer at all levels. In the course of normal BOP procedures, Jae Doe F would have been aware through direct observation and the reporting of subordinates, of the increased victimization faced by sex offenders at FCI Ft. Dix.  It was his direct responsibility to provide safety for these inmates but he failed to do so.  Also, In the course of normal BOP procedures, Jae Doe F would have been aware through direct observation and the reporting of subordinates of my assault and of my languishing in SHU for 3 weeks without medical treatment for a visibly obvious, serious injury.  Jae Doe F failed to utilize procedures available to him to ensure I received such treatment and to report those who were failing to provide it, though he had an obligation to do so.

Fourteenth Defendant (D14): Jae Doe G
Official position: SHU Lieutenant from March 9 to March 26, 2018
Place of employment: FCI Fort Dix, New Jersey
Involvement in the case:  SHU Lieutenant is directly responsible for supervising custody conditions in SHU and for maintaining the physical safety and well-being of all inmates housed in the SHU.  The SHU Lieutenant makes rounds of the SHU and physically observes each inmate housed there.  In the normal course of operations, Jae Doe G would have been aware that from March 9 to March 26 I did not received medical treatment for an obvious, severe physical injury.  Jae Doe G did not utilize procedures available to him to ensure I received such treatment nor did he report the failure of other, responsible staff to do so, as he was required to do.

Fifteenth Defendant (D15): Jae Doe H
Official position: CMC Coordinator
Place of employment: FCI Fort Dix, New Jersey
Involvement in the case:  As CMC coordinator, Jae Doe H oversees case managers, institutional programs like Central Inmate Monitoring and trains all institutional staff, including correctional officers, unit managers, other department heads and associate wardens, on correctional programs issues. In the course of normal BOP operations, unit team staff would report to the CMC coordinator unique programming or case management issues faced by any particular inmate, including safety issues.  Jae Doe H would also become aware through senior executive staff consultation. Jae Doe H thus would have been aware of my safety concerns, and the assault of March 8. Further, on his normal SHU rounds, Jae Doe H would have observed that I failed to received medical treatment for a severe, obvious injury. Jae Doe H did not utilize procedures available to him to ensure I received such treatment nor did he report the failure of other, responsible staff to do so, as he was required to do.

Sixteenth Defendant (D16): Jae Doe I
Official position: Segregation Review Official at FCI Ft. Dix from March 9 to March 26, 2018.
Place of employment: FCI Fort Dix, New Jersey
Involvement in the case:  The Segregation Review Official (SRO) is responsible for administrative oversight of all inmates assigned to SHU.  This

includes reviewing detention orders, unit management or programming requirements and medical treatment orders.  The SRO also directly observes inmates in the SHU through regular rounds. Thus, Jae Doe I would have observed that I failed to received medical treatment for a severe, obvious injury. Jae Doe I did not utilize procedures available to him to ensure I received such treatment nor did he report the failure of other, responsible staff to do so, as he was required to do.

Seventeenth Defendant (D17): J. Rangone
Official position:  Doctor of Medicine
Place of employment: FCI Fort Dix, New Jersey
Involvement in the case:  Dr. Rangone performed mental health assessments on me during which I advised him that I felt unsafe but he failed to report this fact to proper authorities who could have taken measures to secure my safety or take other steps to preserve my safety.

Eighteenth Defendant (D18): Dr. Gomez
Official position:  Psychologist
Place of employment: FCI Fort Dix, New Jersey
Involvement in the case:  Dr. Gomez was the therapist assigned to me for regular treatment. He repeatedly failed to provide me with mental health treatment despite my repeated requests and even though I was diagnosed with multiple mental health diagnoses that required treatment under applicable medical standards.  Also, he knew or should have known through normal operational review with Dr. Rangone and reading his reports that I feared for my safety, but failed to take any measures to preserve my safety.

Nineteenth Defendant (D19):Jae Doe J
Official position: Chief Psychologist
Place of employment: FCI Fort Dix, New Jersey
Involvement in the case:  Chief Psychologist Jae Doe supervised Dr. Gomez and Dr. Rangone and was responsible for ensuring that all patients received adequate mental health treatment. The Chief Psychologist is required to ensure documentation and to provide relevant information to other staff, including knowledge of those inmates who are at risk. Jae Doe J failed to do so in my case. Through the normal process of staff review, Chief Psychologist Jae Doe J would be aware of my need for mental health

treatment and also of the fact that none of his staff were meeting with him. He would have been aware that I had reported feeling unsafe and at risk and would have been required to provide that information to other, appropriate staff. Jae Doe J failed to do so.

**Twentieth Defendant (D20): Jae Doe K**
Official position:  Unit Custody Officer assigned to my unit on March 8, 2018
Place of employment: FCI Fort Dix, New Jersey
Involvement in the case:  Through the course of normal BOP procedures and particularly the count process which requires active visualization of each inmate, Jae Doe K would have observed that I was not in my assigned bunk and that I was covered in blood and obviously injured.  Jae Doe K would have been required to follow-up on my injury, to investigate and to ensure I received immediate medical attention. Jae Doe K failed to do so.

**Twenty-first Defendant (D21)** The United States federal government and its entities, U.S. Bureau of Prisons Central Office, Northeast Regional Office and its facility at Fort Dix, NJ, together negligently failed to ensure my safety through the acts of its various agents described above, and I was severely and permanently injured thereby.  It also failed to provide adequate treatment for my mental health needs and to ensure the safety of me as a sex offender, in conjunction with all sex offenders housed at FCI Ft. Dix during this period.

5.     Exhaustion of Remedies:  I previously have sought informal or formal relief from the appropriate administrative officials regarding the acts complained of in the Statement of Claims, below:  <u>XX</u> Yes

I completed the BOP Administrative Remedy process.  I filed a BP-9 grievance regarding medical treatment and related issues with the prison on July 23, 2019, which was denied on August 30, 2019.  I filed a BP-10 appeal to the Region on September 6, 2019 and was denied October 9, 2019.  I filed a BP-11 appeal to the Central  Office on November 20, 2019 which was denied on January 24, 2020.  I had filed a separate BP-9 grievance on what I thought was a retaliatory transfer on July 18, 2019.  That was denied on August 30, 2019.  My BP-10 to the Region, dated September 6, 2019, was also denied on October 9, 2019.  My BP-11 to the Central Office, dated November 20, 2019, was also denied on February 5, 2020.

**6.   Statement of Claims:**

a.   Defendants D1, D2, D3 and D4 violated my 5th and 8th Amendment and other federal constitutional rights in March 2018 at Ft. Dix, New Jersey, by failing timely to provide me with adequate medical treatment for a visually obvious broken jaw and related facial injuries.  I was beaten up by a group of inmates, and suffered severe injuries, including a bilateral broken jaw (a hanging jaw) and lacerations to his face. Complex surgery and follow-on treatment was required to repair the broken jaw.  Defendants D1 through D4 failed to ensure Plaintiff timely received that surgery, waiting over three weeks even though medical staff labeled the need urgent and even though the outside oral surgeon advised Defendants that he wanted to see me immediately, or that I should be seen by another oral surgeon during his absence. Defendants D1 through D4 further delayed in ensuring adequate and timely follow-on care. By this same conduct, these defendants violated the Constitution of the State of New Jersey, including Article I, Sections 1, 6, 12, 18.  Defendants D5, D6, and D7 similarly violated Plaintiff's rights identified above by acquiescing in the above-named Defendants' direct failure to provide me with adequate medical treatment because they were aware of the urgent need for the surgery, aware that established policies required urgent treatment, directly supervised the above-named Defendants yet failed to ensure adequate medical care in an urgent medical situation even though it was their responsibility to do so. Defendants D8, D9, D10, D11, D12, D14, D15, D16 and D17 similarly violated Plaintiff's rights identified above because all of them saw me in the Segregated Housing Unit in the course of their normal staff duties and saw that for a period of weeks I had not received medical treatment for my injuries, yet they all failed to take any available corrective action or to report the medical deficiency to appropriate investigatory officials.

b.      Defendants D18, D19 and D20 violated my 5th and 8th Amendment and other federal constitutional rights from 2015 to 2018 at Ft. Dix, New Jersey, by failing timely to provide Plaintiff with reasonably adequate mental health care after diagnosing Plaintiff with multiple, serious mental health disorders and after Plaintiff indicated an urgent need for such services, repeatedly requesting mental health services which were not provided. By

this same conduct, these Defendants violated the Constitution of the State of New Jersey, including Article I, Sections 1, 6, 12 and 18.

c.      Defendants D10, D11, and D21 violated Plaintiff's 5th and 8th Amendment rights in March 2018 at Ft. Dix, New Jersey when they saw on March 8, 2018 that Plaintiff was injured and not in his assigned bed, but failed to notify medical or otherwise obtain medical care for him, even though the injuries objectively appeared to be the result of a beating. By this same conduct, these defendants violated the Constitution of the State of New Jersey, including Article I, Sections 1, 6, 12 and 18.

d.      Defendants D8, D9, 10, D11, D12 and D13 violated Plaintiff's 5th and 8th Amendment rights in March 2018 at Ft. Dix, New Jersey by failing adequately to protect him from physical harm when they had sufficient advance notice of a likelihood of immediate harm to warrant protective measures.  By this same conduct, these defendants violated the Constitution of the State of New Jersey, including Article I, Sections 1, 6, 12 and 18.

e.      Defendants D8, D9 and D13 violated Plaintiff's 5th and 8th Amendment rights by failing to take remedial steps necessary from 2014 to 2019 to provide a safe custodial setting for him and other inmates with similar charges who are known to be particularly vulnerable in correctional settings and who, in this specific institution, were routinely and obviously subject to various forms of punishment by other inmates and correction of such abuse was within these Defendants specific responsibilities.  By this same conduct, these Defendants violated the Constitution of the State of New Jersey, including Article I, Sections 1, 6, 12, 18.

f.      Defendants D8, D9, D10, D11, D12, D13 and D16 violated Plaintiff's First and Fifth Amendment rights in May 2018 at Fort Dix, New Jersey by transferring him to a facility significantly more distant from his family and friends because of his protected speech and other protected activities. Specifically, Plaintiff raised complaints and safety concerns about conditions faced by him and other inmates with similar offenses. Plaintiff also asserted other rights and voiced other complaints to staff and then was expressly informed all of these were the reasons for his transfer. These Defendants have primary responsibilities for transfer decisions.

g.      Defendants 8, 9, 10, 19 and 21 discriminated against me on the basis of his mental health disability, in violation of Section 504 of the Rehabilitation Act of 1974, and the New  Jersey Law Against Discrimination, by failing to provide mental health services reasonably necessary for him to acclimate to his custodial setting and to participate in the services and activities therein, from 2014 to the present.  These defendants also discriminated against all sex offenders at Ft. Dix on the same basis.

h.      Defendant D21 violated the duty of care owed to me under New Jersey state law by all of the conduct or omissions described above in paragraphs a to h above, which are in their entirety attributable to Defendant United States and its entities. Under the Federal Tort Claims Act, Defendant United State of America through these entities is liable for these acts or omissions.

i.      Defendants 1, 2, 3, 4 and 5 engaged in medical malpractice under New Jersey state law when they failed timely to ensure I received emergency medical treatment.

7.      Relief: I seek compensatory damages sufficient to restore me to the position I would have been in without the unlawful conduct alleged herein, to include provision of full medical, mental health, educational and other programmatic services while in custody, and full physical and mental security while in custody.  I also seek punitive damages in the amount of $1 million.  I ask that the BOP be enjoined from failure adequately to protect sex offender population, including me, and to ensure their full use of BOP services as available to any other offender.

8.    Do you request a jury or non-jury trial? **XX Non-Jury Trial**

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 29th day of February, 2020

Dated:  February 29, 2020

Respectfully submitted,

Gabriel Francis Toro
USM 66824-050
Federal Correction Institution
LORETTO, PO Box 1000
Cresson, PA 16630