**BLANK ROME LLP**
*A Pennsylvania LLP*
Stephen M. Orlofsky
New Jersey Resident Partner
Blair Gerold
300 Carnegie Center, Suite 220
Princeton, NJ 08540
Telephone: (609) 750-2646
Facsimile: (609) 897-7286
Orlofsky@BlankRome.com
BGerold@BlankRome.com

*Attorneys for Plaintiff Gabriel Francis Toro*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Gabriel Francis Toro, <br><br> Plaintiff, <br><br> v. <br><br> Dr. Jeffrey Asao, Dr. Robert Cabanes, Dr. Nicoletta Turner-Foster, Dr. Bill Bucur, Smith, David Ortiz, Charles Lee, L. Moore, J. Rangone, Dr. Gomez, Jae Does A-K, and The United States Federal Government and its Entities, <br><br> Defendants. | Civil Action No.: 1:20-cv-02282-NLH-AMD <br><br><br> **AMENDED COMPLAINT AND JURY DEMAND** <br><br> *Electronically Filed* |

Plaintiff Gabriel Francis Toro, through his undersigned counsel, alleges as follows:

### JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under the United States Constitution, 28 U.S.C. § 1346(b), and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

2.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial amount of the events giving rise to this action occurred in New Jersey.

161239.00601/125416815v.5

**STATEMENT OF THE CASE**

3.      After months of harassment and threats, Gabriel Toro suffered a severe, vicious attack at the hands of the other inmates in his room at FCI Fort Dix.  This assault unfortunately came as no surprise to Mr. Toro and his family, who had spent months making numerous reports to employees at FCI Fort Dix about these growing hostilities, and requesting a change in Mr. Toro's room assignment.  The assault on Mr. Toro left him with multiple fractures of his jaw, requiring surgery to repair.  However, in contrast to an outside surgeon's directive, FCI Fort Dix medical staff delayed Mr. Toro's surgery for weeks, needlessly extending his pain and suffering, and causing permanent damage to his jaw.  Due to the deliberate indifference of multiple Fort Dix staff members to the serious and obvious threats to Mr. Toro's health and safety, those individuals and the Bureau of Prisons are jointly and severally liable for Mr. Toro's injuries and must now compensate Mr. Toro for his damages.

**PARTIES**

4.      Plaintiff Gabriel Toro is an individual currently incarcerated at FCI Loretto, 772 Saint Joseph Street, Loretto, Pennsylvania 15940.  At all times relevant to this matter, he was incarcerated at FCI Fort Dix, 5756 Hartford & Pointville Road, Joint Base MDL, New Jersey, 08640.  He is, and at all relevant times was, serving a sentence for "Coercion and enticement," a sex offense, under 18 U.S.C. § 2422(b).

5.      Defendant Jeffrey Asao is a dental officer for the Bureau of Prisons at FCI Fort Dix, and a treating physician of Mr. Toro.

6.      Defendant Robert Cabanes is a chief dental officer for the Bureau of Prisons at FCI Fort Dix, and was a treating physician of Mr. Toro.

7.      Defendant Nicoletta Turner-Foster is a medical officer for the Bureau of Prisons at FCI Fort Dix, and a treating physician of Mr. Toro.

8.    Defendant Bill Bucur is a dental officer for the Bureau of Prisons at FCI Fort Dix, and a treating physician of Mr. Toro.

9.    Defendant Smith is an Associate Warden for the Bureau of Prisons at FCI Fort Dix.

10.    Defendant David Ortiz is a Warden for the Bureau of Prisons at FCI Fort Dix.

11.    Defendant Charles Lee is a counselor for the Bureau of Prisons at FCI Fort Dix, and the case manager for Mr. Toro.

12.    Defendant L. Moore is a case manager for the Bureau of Prisons at FCI Fort Dix, and the case manager for Mr. Toro.

13.    Defendant Rangone is a mental health doctor for the Bureau of Prisons at Fort Dix, and was a treating doctor for Mr. Toro.

## FACTS

14.    In the early hours of March 8, 2018 Mr. Toro was brutally assaulted by inmates housed in the same room as him.  This assault was not a surprising turn of events, but rather the next logical step in a long-running escalation of Mr. Toro's roommates' hostilities towards those convicted of sex offenses.

### Failure to Protect Mr. Toro From Attack

15.    In March 2017, Mr. Toro's office space within the education department was ransacked, resulting in the destruction or theft of many of his possessions.  Instead of having the incident investigated, Mr. Toro was disciplined for lodging his frustration, and placed in the segregated housing unit ("SHU").  Defendant Moore was made aware of this attack on Mr. Toro's belongings through his review of Mr. Toro's disciplinary documents.

16. Upon Mr. Toro's return from the SHU in May 2017, he was placed in a new room with eleven other inmates who were extremely aggressive towards him because of his conviction for a sex offense.

17. Mr. Toro reported this increased aggression to his counselor, Defendant Lee, and requested a room reassignment.

18. One roommate later accused Mr. Toro of speaking to prison staff, and labeled Mr. Toro a "rat," further increasing the room's hostility and verbal threats towards him. This was again reported to Defendant Lee.

19. However, Defendant Lee would merely press Mr. Toro for accusations against specific inmates, an action that would inevitably create increased danger for Mr. Toro.

20. Mr. Toro also reported his fears of safety to Defendant Rangone, who documented Mr. Toro's concerns and the increased threats on Mr. Toro's safety. But, upon information and belief, these threats and concerns were not reported by Defendant Rangone to anyone else.

21. Aggression towards Mr. Toro continued, and escalated into actions: inmates stole multiple pairs of Mr. Toro's shoes, and others destroyed shoes, punching them with holes and filling them with garbage.

22. As Mr. Toro continued to live in this unsafe environment, he brought his concerns and requests for a new room assignment to staff members verbally, and in writing, including written requests to Defendant Smith.

23. Mr. Toro's parents also contacted Defendant Ortiz about Mr. Toro's safety concerns, and the effect this pervasive danger was having on his mental and physical health.

24.    Defendant Smith's only response to Mr. Toro was a request to identify specific inmates, sometimes asking him to do so in public, which would act only as a band-aid to the pervasive hostilities Mr. Toro faced, and would ensure further retaliation from other inmates.

25.    His concerns ignored; Mr. Toro's fears were eventually realized when his roommates attacked him on March 8, 2018—an event that could have been avoided had Mr. Toro been given a new room assignment.

<u>Mr. Toro's Assault and Arbitrarily Delayed Medical Treatment</u>

26.    In February 2018, Mr. Toro requested, and received, permission to move to an empty lower bunk within his room.

27.    This reassignment escalated the ongoing hostility Mr. Toro faced from the other inmates in his room, which included threats and attempts at extortion.

28.    In the early hours of March 8, 2018, these threats reached their inevitable conclusion when Mr. Toro was assaulted by his roommates.  After multiple inmates pummeled him, breaking his jaw in multiple places, they further degraded him by forcing him out of the bed he was assigned to, and to move his mattress to a top bunk.

29.    Mr. Toro's injuries were plainly visible, as his face was swollen and bleeding long after his attack.  He also had difficulty speaking, slurred when he was able to speak, and had limited function of his jaw.

30.    Despite these obvious signs of severe trauma, he was not sent to receive medical care despite various direct interactions with officers on March 8, 2018, including:

    a.  Being present for the 2:00 a.m. and 5:00 a.m. counts;

    b.  Interactions with Defendant Moore and Defendant Lee for morning inspection; and

     c.   Discussions with Counselor Rivera about his inability to perform his work assignment.

31.    On March 9, 2018, Mr. Toro attempted to seek medical help at the 6:00 a.m. sick call.

32.    After initially being refused an examination by the medical officer, at 9:00 a.m., Mr. Toro was examined by Defendant Asao. Defendant Asao was unable to take an x-ray due to a power outage, but nevertheless could easily determine that Mr. Toro suffered from a fractured jaw based on a visual and tactile examination. Mr. Toro was then sent for emergency x-rays at Robert Wood Johnson Hospital.

33.    At the hospital, Mr. Toro was found to have suffered a bilateral mandible fracture, and was discharged with instructions to see an oral surgeon, Dr. Joseph Focarile, and to be given a liquid high-protein diet and liquid pain medication since he was unable to use his jaw.

34.    Mr. Toro was then transported back to Fort Dix, where he was prescribed pain medication, in pill form instead of liquid form, by Defendant Turner-Foster.

35.    Defendant Asoa contacted Dr. Focarile, who attempted to immediately see Mr. Toro for corrective surgery. However, Dr. Focarile's notes indicate that the "prison could not arrange." Dr. Focarile then "spoke to Dr. Asoa of FCI multiple times and told [him] to have [Mr. Toro] treated at another office" because Dr. Focarile would be on vacation the following week. However, Dr. Focarile noted Fort Dix's inability to "find anyone else" and therefore he "agreed to see [Mr. Toro] on [his] return."

36.    Instead of arranging for this urgent medical care, Defendants Asao, Cabanes, and Bucur simply moved Mr. Toro's target date for surgery multiple times until Dr. Focarile returned from vacation.

37.     In the approximately two-and-a-half weeks between his initial examination, and eventual appointment with Dr. Focarile, Mr. Toro's jaw was held together with nothing more than a barton bandage wrap, and Mr. Toro was in extreme pain.

38.     During that time period, Mr. Toro repeatedly asked for updates about when he would receive treatment, and why his surgery was delayed.  He was told by Defendant Moore that "this is what you get for playing hardball."

39.     On March 26, 2018, weeks after Mr. Toro's injury, he was finally brought to see Dr. Focarile.  Dr. Focarile confirmed the previous diagnosis that Mr. Toro suffered multiple fractures, displacement of the jaw, and "obvious neurovascular involvement."  During his examination, Dr. Focarile warned Mr. Toro that there was a "possible non-union [of the jaw] due to delay in tr[eatmen]t" and "possible less than perfect reduction due to delay in treatment."  Dr. Focarile then reset and wired Mr. Toro's jaw into place.

40.     Mr. Toro's jaw remained wired for six weeks, until the wiring was removed on May 9, 2018.

41.     In line with Dr. Focarile's warnings regarding the delay in Mr. Toro's treatment, to this day Mr. Toro still suffers from numbness of the jaw, and experiences pain and difficulty chewing.

## COUNT I

Violation of Mr. Toro's Eighth Amendment Rights for Failure to Provide Medical Treatment

42.     Mr. Toro incorporates and realleges the previous paragraphs of the Amended Complaint as if set forth herein.

43.     The bilateral fracture from which Mr. Toro suffered constituted a serious medical need, requiring surgery and several weeks of a wired jaw to repair.  His jaw has never fully healed.

44.    This injury, and its severity, were plainly obvious based on Mr. Toro's bleeding, hanging jaw, swelling, and slurred speech.

45.    Despite these obvious signs of severe injury, Defendants Lee and Moore did not send Mr. Toro to seek medical treatment after seeing and speaking with him on March 8, 2018, after his attack.

46.    Further, Defendants Asao, Cabanes, and Bucur, despite knowing the severity of Mr. Toro's injuries, and despite Dr. Focarile's instruction that Mr. Toro should be seen by a different surgeon in Dr. Focarile's absence, delayed Mr. Toro's corrective surgery for weeks.

47.    None of Mr. Toro's treating physicians—Defendants Asao, Cabanes, Bucur, or Turner-Foster, arranged for surgery with an alternative provider for Mr. Toro, despite the obvious and serious nature of his injuries and extensive time he spent waiting for surgery.

48.    This delay constituted deliberate indifference to Mr. Toro's serious medical need, and caused Mr. Toro to suffer additional unnecessary pain, caused his jaw to set improperly, and resulted permanent damage, including continued pain and numbness of the jaw.

49.    This delay in treatment was not based on medical judgment, but non-medical considerations of administrative ease.

50.    Further Defendants Ortiz and Smith toured the SHU multiple times, and saw Mr. Toro's physical state between March 9 and March 26. During that time, it was visibly obvious Mr. Toro was not receiving the necessary treatment for his broken jaw—he continued to experience swelling, bleeding and be wrapped only in a barton bandage. Despite the fact that it was clear Mr. Toro was not receiving the medical treatment he desperately needed, Defendants Ortiz and Smith did not take any actions to obtain necessary medical care for Mr. Toro.

51.    Each of these defendants showed a deliberate indifference to Mr. Toro's serious medical needs, in violation of Mr. Toro's Eighth Amendment rights.

52.     That delay in treatment unnecessarily extended his pain and suffering, and resulted in permanent damage to his jaw.

53.     Therefore, Defendants Lee, Moore, Asao, Cabanes, Bucur, Turner-Foster, Ortiz and Smith are liable for the damages suffered by Mr. Toro under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

54.     Mr. Toro has previously exhausted administrative remedies regarding this deliberate indifference, having completed an inmate request on May 21, 2019, an administrative remedy informal resolution form in July 2019, a BP-229 form on July 23, 2019, a BP-230 form on September 9, 2019, and an administrative remedy appeal on November 20, 2019, all of which were denied or unsatisfactorily resolved.

**WHEREFORE**, Plaintiff requests judgment as follows:

a. Damages to compensate Mr. Toro for his pain and suffering, and permanent damages due to the delays in his treatment;

b. Awarding pre-judgment and post-judgment interest;

c. Awarding Plaintiff's attorneys' fees and costs; and

d. Granting any other relief as the Court may deem just and proper.

## COUNT II

Violation of Mr. Toro's Eighth Amendment Rights for Failure to Protect Mr. Toro

55.     Mr. Toro incorporates and realleges the previous paragraphs of the Amended Complaint as if set forth herein.

56.     In the months leading up to his attack, Mr. Toro made various prison personnel aware of threats and harassment he faced, and requested that his room be changed as a result.

57.    Mr. Toro's complaints were specific—that he was being harassed by other inmates in his room, and that he had been labeled a "rat" subjecting him to heightened hostility.

58.    The danger Mr. Toro faced was further substantiated by attacks on Mr. Toro's property, including the ransacking of his office space in the education department, and the theft and destruction of his personal property.

59.    Despite Mr. Toro and his parents making his concerns known to Defendants Lee, Moore, Rangone, Ortiz, and Smith, those defendants did nothing to protect Mr. Toro from this substantial risk of serious harm.

60.    By failing to transfer Mr. Toro to a different room, despite having actual knowledge of the substantial risk of serious harm Mr. Toro faced, Defendants Lee, Moore, Rangone, Ortiz, and Smith demonstrated deliberate indifference towards that risk.

61.    That failure to protect Mr. Toro directly resulted in his eventual attack, and resultant injuries, including the multiple fractures of his jaw.

62.    Therefore, Defendants Lee, Moore, Rangone, Ortiz, and Smith are liable for the damages suffered by Mr. Toro under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

63.    Mr. Toro has previously exhausted administrative remedies regarding this treatment, having submitted an administrative remedy informal resolution form in July 2019, and a request for administrative remedy on July 10, 2019, wherein Mr. Toro noted that his injuries were the result of "an incident preventable by staff."

**WHEREFORE**, Plaintiff requests judgment as follows:

    a.  Damages in the amount of $10,000,000.00 to compensate Mr. Toro for his pain and suffering, and permanent damages due to Defendants' failure to protect him from assault;

b.  Awarding pre-judgment and post-judgment interest;

c.  Awarding Plaintiff's attorneys' fees and costs; and

d.  Granting any other relief as the Court may deem just and proper.

## COUNT III

### Medical Malpractice

64.  Mr. Toro incorporates and realleges the previous paragraphs of the Amended Complaint as if set forth herein.

65.  At all relevant times, Defendants Asao, Cabanes, Bucur, and Turner-Foster were employees of the Bureau of Prisons, acting within the scope of their employment.

66.  At all relevant times, Mr. Toro was a patient of Defendants Asao, Cabanes, Bucur, and Turner-Foster.

67.  As explained in ¶¶ 42-55, *supra*, these defendants acted with deliberate indifference in their medical treatment of Mr. Toro by arbitrarily delaying surgery to correct his broken jaw.

68.  These actions were taken despite instruction from Dr. Focarile that Mr. Toro should have underwent corrective surgery immediately.

69.  There was no medical rationale for these failures, and they were instead the byproduct of administrative ease.

70.  These actions were deviations from professional standard of care in treating someone with Mr. Toro's injuries.

71.  As a result of this failure to meet the professional standard of care, Mr. Toro experienced unnecessary pain and suffering.

72.     Defendants' deviation from the standard of care also caused permanent injury in the form of continued pain and numbness of the jaw, and limitations in jaw function.

73.     Mr. Toro previously presented this claim to the Bureau of prisons on January 6, 2020 through the submission of a Standard Form 95, "Claim for Damage, Injury or Death." That claim was denied.

74.     Therefore, under the Federal Torts Claims Act, 28 U.S.C. § 1346(b), the Bureau of Prisons is liable for the medical malpractice committed by Defendants Asao, Cabanes, Bucur, and Turner-Foster.

**WHEREFORE**, Plaintiff requests judgment as follows:

   a. Damages in the amount of $10,000,000.00 to compensate Mr. Toro for his pain and suffering, and permanent damages due to the delays in his treatment;

   b. Awarding pre-judgment and post-judgment interest;

   c. Awarding Plaintiff's attorneys' fees and costs; and

   d. Granting any other relief as the Court may deem just and proper.

## COUNT IV

### Medical Malpractice

75.     Mr. Toro incorporates and realleges the previous paragraphs of the Amended Complaint as if set forth herein.

76.     At all relevant times, Defendants Asao, Cabanes, Bucur, and Turner-Foster had a duty to act reasonably in providing care to Mr. Toro.

77. At all relevant times, Defendants Asao, Cabanes, Bucur, and Turner-Foster were employees of the Bureau of Prisons, acting within the scope of their employment.

78. By arbitrarily delaying Mr. Toro's access to corrective surgery, in direct contradiction to the medical directives of Dr. Focarile, Defendants Asao, Cabanes, Bucur, and Turner-Foster failed to act reasonably to prevent Mr. Toro from suffering a foreseeable harm.

79. As a result of this failure to act reasonably, Mr. Toro's pain and suffering was prolonged, and he has suffered permanent injuries to his jaw in the form of continued pain and numbness of the jaw, and limitations in jaw function.

80. Mr. Toro previously presented this claim to the Bureau of prisons on January 6, 2020 through the submission of a Standard Form 95, "Claim for Damage, Injury or Death." That claim was denied.

81. Therefore, under the Federal Torts Claims Act, 28 U.S.C. § 1346(b), the Bureau of Prisons is liable for the medical malpractice committed by Defendants Asao, Cabanes, Bucur, and Turner-Foster.

**WHEREFORE**, Plaintiff requests judgment as follows:

   a. Damages in the amount of $10,000,000.00 to compensate Mr. Toro for his pain and suffering, and permanent damages due to the delays in his treatment;

   b. Awarding pre-judgment and post-judgment interest;

   c. Awarding Plaintiff's attorneys' fees and costs; and

   d. Granting any other relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 20, 2021

*s/ Stephen M. Orlofsky*
**BLANK ROME LLP**
*A Pennsylvania LLP*
Stephen M. Orlofsky
New Jersey Resident Partner
Blair Gerold
300 Carnegie Center, Suite 220
Princeton, NJ 08540
Telephone: (609) 750-2646
Facsimile: (609) 897-7286
Orlofsky@BlankRome.com
BGerold@BlankRome.com
*Attorneys for Plaintiff Gabriel*
*Francis Toro*

-15-

## <u>CERTIFICATION PURUSANT TO LOCAL CIVIL RULE 11.2</u>

Pursuant to Local Civil Rule 11.2, I certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court, or of any arbitration or administrative proceeding.

Dated: April 20, 2021

*s/ Stephen M. Orlofsky*
Stephen M. Orlofsky