# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

GABRIEL FRANCIS TORO,

               Plaintiff,

v.

DR. JEFFREY ASAO, et al.,

               Defendants.

Civil Action
No. 20-2282 (CPO) (AMD)

**OPINION**

**O'HEARN, District Judge.**

Before the Court is Defendants' motion to dismiss the Amended Complaint (hereinafter "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 29.) For the following reasons, the Court will grant in part the motion to dismiss and dismiss all of Plaintiff's Federal Tort Claims Act claims, as well as his *Bivens* claims against Defendant Cabanes, for lack of jurisdiction. The Court will also dismiss without prejudice Plaintiff's claims against Defendant Gomez for failure to state a claim. Finally, the Court will deny Defendants' motion as to Defendant Ortiz.

## I.      BACKGROUND[1]

This case arises from an assault during Plaintiff's incarceration at Federal Correctional Institution Fort Dix. (ECF No. 9, ¶ 14.) On March 8, 2018, several inmates housed in the same room brutally assaulted Plaintiff. (*Id.*) "This assault was not a surprising turn of events, but rather the next logical step in a long-running escalation of Mr. Toro's roommates' hostilities towards [him, as a person] convicted of sex offenses." (*Id.*)

---

[1] The Court will accept as true the factual allegations—that are unrelated to jurisdiction—in the Complaint for the purposes of this Opinion only. The Court has made no findings as to the veracity of Plaintiff's allegations that are unrelated to jurisdiction.

Plaintiff names Jeffrey Asao, Robert Cabanes, Nicoletta Turner-Foster, Bill Bucur, Charles Smith, David Ortiz, Charles Lee, L. Moore, John Rangone, and the "United States Federal Government and its Entities," as Defendants in this matter. (*Id*. at 1, ¶¶ 5–13.)   According to Plaintiff, about a year prior to the assault, staff placed him in a new room, in May of 2017, "with eleven other inmates who were extremely aggressive towards him because of his conviction for a sex offense." (*Id*. ¶ 16.)  Plaintiff reported the "increased aggression to his counselor, Defendant Lee, and requested a room reassignment." (*Id*. ¶ 17.)

Thereafter, one of Plaintiff's roommates accused him of speaking to prison staff and labeled him a "rat," increasing the room's hostility and threats towards him. (*Id*. ¶ 18.)  Plaintiff reported the development to Defendants Lee and Rangone, who did nothing in response. (*Id*.)  The harassment continued to escalate, and Plaintiff brought his concerns to Defendant Smith, whose only response was to ask Plaintiff, "to identify specific inmates, sometimes asking him to do so in public, which would act only as a band-aid to the pervasive hostilities . . . and would ensure further retaliation from other inmates." (*Id*. ¶ 24.)   Plaintiff's parents also contacted the Warden, Defendant Ortiz, raising Plaintiff's safety concerns. (*Id*. ¶ 23.)

Defendants Lee, Rangone, and Ortiz ignored these concerns, which resulted in the March 8, 2018, attack on Plaintiff, which "could have been avoided had Mr. Toro been given a new room assignment." (*Id*. ¶ 25.)  The "inmates pummeled him, breaking his jaw in multiple places." (*Id*. ¶ 28.)  Plaintiff's "injuries were plainly visible, as his face was swollen and bleeding long after his attack. . . [and he] also had difficulty speaking, slurred when he was able to speak, and had limited function of his jaw." (*Id*. ¶ 29.)

"Despite these obvious signs of severe trauma, he was not sent to receive medical care that day, despite various direct interactions with" Defendants Moore and Lee. (*Id*. ¶ 30.)  The next day,

Plaintiff sought medical assistance and Defendant Asao eventually examined him. (*Id.* ¶ 32.) "Defendant Asao was unable to take an x-ray due to a power outage, but nevertheless could easily determine that [Plaintiff] suffered from a fractured jaw based on a visual and tactile examination," and then sent Plaintiff for emergency x-rays at Robert Wood Johnson Hospital. (*Id.*)

At the hospital, an oral surgeon, Dr. Joseph Focarile, treated Plaintiff and diagnosed him as having "suffered a bilateral mandible fracture." (*Id.* ¶ 33.) Dr. Focarile "attempted to immediately see Mr. Toro for corrective surgery," but Defendant Asao and the "prison[,] could not arrange" the surgery. (*Id.* ¶ 35.) Dr. Focarile spoke to Defendant Asao multiple times and told Defendant Asao to have a different office treat Plaintiff because Dr. Focarile would be on vacation the following week. (*Id.*) Nevertheless, Fort Dix staff was unable to "find anyone else" and therefore, Dr. Focarile agreed to see Plaintiff when he returned from vacation. (*Id.*)

"Instead of arranging for this urgent medical care, Defendants Asao, Cabanes, and Bucur simply moved Mr. Toro's target date for surgery multiple times until Dr. Focarile returned from vacation." (*Id.* ¶ 36.) In the intervening time, Plaintiff's jaw "was held together with nothing more than a barton bandage wrap," and Plaintiff "was in extreme pain." (*Id.* ¶ 37.) Weeks later, on March 26, 2018, Dr. Focarile examined Plaintiff and said that there was a "possible non-union of the jaw," and "possible less than perfect reduction due to [the] delay in treatment." (*Id.* ¶ 39.) Dr. Focarile then reset and wired Plaintiff's jaw into place. (*Id.*) "In line with Dr. Focarile's warnings regarding the delay in . . . treatment, to this day Mr. Toro still suffers from numbness of the jaw, and experiences pain and difficulty chewing." (*Id.* ¶ 41.)

Plaintiff initiated this action *pro se* in March of 2020 and filed the instant Complaint with appointed counsel in April of 2021. Defendants filed a motion to dismiss pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6), (ECF No. 29), Plaintiff filed an Opposition, (ECF No. 32), and Defendants filed a Reply, (ECF No. 33).

## II.       STANDARD OF REVIEW

### A.       Rule 12(b)(1) Motions to Dismiss

Under Rule 12(b)(1), an attack on subject matter jurisdiction may be either a facial or a factual attack. *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008). A facial attack "concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Id.* (internal quotation marks omitted) (alteration marks omitted).

In a facial attack, "the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In a factual attack, "it is permissible for a court to review evidence outside the pleadings." *Id.*

Defendants have presented this Court with a factual attack, as they contend that the facts of the case preclude this Court from exercising subject matter jurisdiction. In a factual attack, plaintiff's allegations related to jurisdiction do not enjoy the presumption of truthfulness. *CNA*, 535 F.3d at 139; *Mortensen*, 549 F.2d at 891. Plaintiffs bear the burden of persuasion to establish jurisdiction, and the Court may make factual findings beyond the pleadings that are decisive to determining jurisdiction. *CNA*, 535 F.3d at 145; *Atkinson*, 473 F.3d at 514.

### B.  Rule 12(b)(6) Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts

accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675).  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680).  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

"When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings." *Bermudez v. Blue Cross & Blue Shield of New Jersey*, No. 19-21637, 2020 WL 4188159, at *2 (D.N.J. July 21, 2020) (internal quotation marks omitted).  "However, a court may consider documents that are 'integral to  or explicitly relied upon  in  the complaint' or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 372 (D.N.J. 2019) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)).

### III. DISCUSSION

Plaintiff brings this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

#### A. Federal Tort Claims Act Claims

First, Defendants move to dismiss Plaintiff's FTCA claims arising from medical malpractice,[2] for lack of jurisdiction.  More specifically, Defendants contend, under Rule 12(b)(1), that this Court lacks jurisdiction to hear these claims because Plaintiff did not bring suit against a proper party and failed to exhaust his administrative remedies under the FTCA.

Generally, the "FTCA operates as a limited waiver of the United State[s'] sovereign immunity." *White–Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010).  Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.  An incarcerated FTCA plaintiff may sue only the United States, may seek only monetary damages, and may not recover for mental or emotional damages in the absence of physical injury. *See* 28 U.S.C. § 1346(b)(1)–(2); *CNA*, 535 F.3d at 138 n.2.

A plaintiff suing under the FTCA must present the offending agency with notice of the claim, including a "sum certain" demand for monetary damages. *See White–Squire*, 592 F.3d at 457.  "Because the requirements of presentation and a demand for a sum certain are among the terms defining the United State['s] consent to be sued, they are jurisdictional." *Id.*  An agency's final denial of the tort claim is also a jurisdictional requirement. *Lightfoot v. United States*, 564

---

[2] The Complaint does not appear to raise any state medical malpractice claims, and Defendants do not appear to challenge any state medical malpractice claims. (ECF No. 9, ¶¶ 64–81; ECF No. 29, at 6–9.)

F.3d 625, 627 (3d Cir. 2009).  These requirements cannot be waived. *See, e.g.*, *White–Squire*, 592 F.3d at 457; *Lightfoot*, 564 F.3d at 627.

"In other words, if a plaintiff has not complied with the FTCA's pleading requirements, a district court has no subject matter jurisdiction over the claim." *Palmer v. United States*, No. 21-11721, 2022 WL 310208, at *4 (D.N.J. Feb. 1, 2022) (internal quotation marks omitted); *Cabrera v. United States*, No. 21-17483, 2021 WL 5356111, at *4 (D.N.J. Nov. 17, 2021); *Hoffenberg v. United States*, No. 10-2788, 2012 WL 379934, at *4 (D.N.J. Feb. 6, 2012).  A plaintiff asserting a FTCA claim bears the burden of establishing that he has met these requirements. *Livera v. First Nat. State Bank of New Jersey*, 879 F.2d 1186, 1194–95 (3d Cir. 1989).

As an initial matter, Plaintiff appears to assert his FTCA claims against the Bureau of Prisons ("BOP"), rather than the United States. (ECF No. 9 ¶¶ 64–81.)  Plaintiff cannot, however, maintain a claim against the Bureau of Prisons, as the United States is the only proper defendant for a FTCA claim. *E.g.*, *CNA*, 535 F.3d at 138 n.2. ("The Government is the only proper defendant in a case brought under the FTCA."); *see also* 28 U.S.C. § 1346(b)(1)–(2).  Accordingly, the Court will dismiss Plaintiff's FTCA claims against the BOP for lack of jurisdiction.

Next, even if this Court were to substitute the United States[3] as the proper party, the Court would nevertheless dismiss these claims for lack of jurisdiction, as Plaintiff failed to exhaust his administrative remedies.   In his Complaint, Plaintiff does not allege that he exhausted his administrative remedies *prior* to filing suit.  Plaintiff only alleges that he presented his tort claim to the BOP "on January 6, 2020, through the submission of a Standard Form 95, 'Claim for

---

[3] Although the Complaint names the United States in its caption, it does not appear to name the United States as a defendant in the body of the Complaint with respect to its FTCA claims. (ECF No. 9 ¶¶ 64–81.)

Damage, Injury or Death'" and that "[t]hat claim was denied." (ECF No. 9, ¶¶ 73, 80.)  The Complaint fails to identify when the BOP allegedly denied the claim.  (*Id.*)

According to Defendants, the BOP's records show that it received Plaintiff's administrative tort claim on February 20, 2020, and the BOP denied the claim about a year later, on February 11, 2021. (ECF No. 29-3, ¶¶ 3–5.)  Plaintiff, however, initiated suit in this case on March 2, 2020, which was prior to the actual denial of the claim, and prior to the six-month constructive[4] denial of the claim.  Further, the fact that Plaintiff eventually filed an amended complaint after the denial of his tort claim does not cure the jurisdictional issue. *Hoffenberg v. Provost*, 154 F. App'x 307, 310 (3d Cir. 2005) ("The District Court properly rejected this argument, as the date of the amended complaint cannot serve as the date the federal suit was 'instituted.'"); *see McNeil v. United States*, 508 U.S. 106, 111–13 (1993) (rejecting the argument that plaintiffs can prematurely file a complaint and then wait for a final denial).

Finally, Plaintiff did not oppose the dismissal of his FTCA claims. (ECF No. 32.) Accordingly, because Plaintiff's FTCA claims fail to sue the proper party and because even if the Court substitutes the United States as the proper party, the Plaintiff failed to exhaust his administrative remedies *prior* to initiating suit, this Court will grant Defendants' motion and dismiss the FTCA claims for lack of subject matter jurisdiction. *Lightfoot*, 564 F.3d at 627; *Lampon-Paz v. Dep't of Just.*, No. 16-9071, 2019 WL 2098831, at *6 (D.N.J. May 14, 2019), *aff'd,* 793 F. App'x 137 (3d Cir. 2019).

---

[4] "The failure of an agency to make a final disposition of a claim within six months after it is filed, shall at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." 28 U.S.C. § 2675(a).

## B.  Claims Against Defendant Cabanes

Next, Defendants argue that that under the Public Health Service Act, 42 U.S.C. § 233, Public Health Service ("PHS") employees such as Defendant Cabanes are immune from suit.  As a result, Defendants move to dismiss the *Bivens* claims against Defendant Cabanes under Rule 12(b)(1), for lack of jurisdiction.[5]

Under 42 U.S.C. § 233(a), the "exclusive" remedy arising from claims "for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment," shall be a FTCA claim against the United States.  In other words, "Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct," and limiting "recovery for such conduct to suits against the United States." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010).  Further, in *Hui*, the Supreme Court specifically held "that the immunity provided by § 233(a) precludes *Bivens* actions against individual PHS officers or employees for harms arising out of conduct described in that section." *Id.* at 812.

With those principles in mind, Plaintiff does not dispute Defendant Cabanes' declaration which states that he was a PHS employee during the events of the Complaint, as chief dental officer

---

[5] The Court notes that other courts in this District have specifically construed motions which seek dismissal of Public Health Service employees in *Bivens* actions as "factual" attacks on subject matter jurisdiction under Rule 12(b)(1). *See, e.g.*, *Fuller v. FCI Manchester Health Serv.*, No. 12-7025, 2016 WL 1182255, at *5 (D.N.J. Mar. 28, 2016); *Stevens v. Zickefoose*, No. 12-3011, 2015 WL 5227446, at *5 (D.N.J. Sept. 8, 2015); *Kimbugwe v. United States*, No. 12-7940, 2014 WL 6667959, at *2 (D.N.J. Nov. 24, 2014).

of Fort Dix. (*Compare* ECF No. 29-5, *with* ECF No. 32.)  Nor does Plaintiff dispute that his *Bivens* claims against Defendant Cabanes arose "from the performance of medical, surgical, dental, . . . or related functions," under § 233(a). 42 U.S.C. § 233(a).  Indeed, Plaintiff does not oppose Defendants' motion to dismiss the claims against Defendant Cabanes.  (ECF No. 32.)

As a result, § 233(a) precludes Plaintiff's claims against Defendant Cabanes, and deprives this Court of jurisdiction as to such claims. *See  Fuller v. FCI Manchester Health Serv.*, No. 12-7025, 2016 WL 1182255, at *6 (D.N.J. Mar. 28, 2016) (granting a Rule 12(b)(1) motion as to the *Bivens* claims against a PHS employee at a different federal prison).  Accordingly, the Court will grant Defendants' motion and dismiss the claims against Defendant Cabanes for lack of subject matter jurisdiction. *Gomez v. Cullen*, No. 21-2776, 2022 WL 1183713, at *2 (3d Cir. Apr. 21, 2022) (affirming the dismissal of *Bivens* claims against a PHS employee for lack of subject matter jurisdiction).

### C.  Claims Against Defendants Gomez and Ortiz

Finally, Defendants move to dismiss the *Bivens* claims against Defendants Gomez and Ortiz, for failure to state a claim under Rule 12(b)(6).  More specifically, Defendants contend that the Court should dismiss these claims because there are "no specific factual allegations tying [Defendants Gomez and Ortiz] to any specific alleged constitutional violation." (ECF No. 29-2, at 16.)

Generally, qualified immunity protects individuals so that they can "perform their public duties with[out] unwarranted timidity or be deterred from entering [a] line of work." *Filarsky v. Delia*, 566 U.S. 377, 393 (2012).  As a result, government officials are generally immune from suit for civil damages so long as their conduct "does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

To determine whether defendants are entitled to qualified immunity, a two-step analysis is necessary.  First, the Court must consider whether, "taken in the light most favorable to the party asserting the injury, . . . the facts . . . show [that] the officer's conduct violated a constitutional right." *Hamilton v. Leavy*, 322 F.3d 776, 786 (3d Cir. 2003) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Second, a court must "ask whether the right was clearly established." *Id*.  This means that "there must be sufficient precedent at the time of [the defendant's] action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012) (citing *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001)) (alterations in original).  Although courts will often consider the first prong prior to the second, a court has "discretion in deciding which of the two prongs of the qualified immunity analysis" it will decide first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

With those principles in mind, Plaintiff does not oppose Defendants' motion to dismiss as to Defendant Gomez.  As Defendants emphasize, the Complaint "contains no mention of Defendant Gomez other than listing him in the case caption." (ECF No. 29-2).  Consequently, as there are no specific allegations as to Defendant Gomez, the Complaint fails to state a claim against him.  As it is feasible that Plaintiff could amend the Complaint to state a claim against Defendant Gomez, the Court will simply dismiss the claims against him without prejudice for failure to state a claim, rather than dismiss those claims under qualified immunity.

As to Defendant Ortiz, the Court arrives at a different conclusion.  Plaintiff raises two *Bivens* claims against Defendant Ortiz.

### 1.  Claim Against Defendant Ortiz for the Delay or Denial of Medical Care

First, Plaintiff contends under Count I that Defendant Ortiz, among others,[6] delayed or denied Plaintiff medical treatment in violation of the Eighth Amendment. (ECF No. 9, ¶ 50–51.) Under the Eighth Amendment, for the delay or denial of medical care to rise to a constitutional violation, a person must demonstrate: "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Courts have found deliberate indifference where an official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197.

In his Complaint, Plaintiff alleges that Defendant "Ortiz . . . toured the [Special Housing Unit] multiple times . . . and saw Mr. Toro's physical state between March 9 and March 26," 2018. (ECF No. 9, ¶ 50.)  During that time period, "it was visibly obvious Mr. Toro was not receiving the necessary treatment for his broken jaw—he continued to experience swelling, bleeding and [was] wrapped only in a barton bandage." (*Id*.)  Despite seeing Plaintiff multiple times in that state, Defendant Ortiz "did not take any actions to obtain necessary medical care for Mr. Toro." (*Id*.)

Ultimately, discovery may shed light on the precise nature and detail of these interactions, but at the motion to dismiss stage, this Court must take these allegations as true, draw "all

---

[6] Defendants do not move to dismiss the claims in Count I that are related to the other remaining Defendants.

reasonable inferences," and "view them in the light most favorable to the plaintiff." *E.g.*, *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  From these allegations, one could reasonably infer that Plaintiff had a ghastly visage between March 9 and March 26, 2018, and that Defendant Ortiz observed Plaintiff's condition on multiple occasions during that time period, in relatively close proximity.  A jury could reasonably find that, upon seeing Plaintiff's injuries, Defendant Ortiz subjectively perceived Plaintiff's serious need for medical treatment, and then intentionally refused to provide it, or delayed medical treatment for a nonmedical reason. *Rouse*, 182 F.3d at 197.

Consequently, the Complaint states a claim for the denial or delay of medical treatment under the Eighth Amendment.  For substantially the same reasons, under the first prong of the qualified immunity analysis, "taken in the light most favorable to" Plaintiff, the alleged facts show that Defendant Ortiz's "conduct violated a constitutional right." *Hamilton*, 322 F.3d at 786 (internal quotation marks omitted).

In moving to dismiss based on qualified immunity, it appears that Defendants assumed that they would succeed on the first prong and did not argue, in the alternative, as to whether Defendant Ortiz violated a clearly established right. (ECF No. 29-2, at 16–18.)  Accordingly, Defendants have not met their burden to show that Defendant Ortiz is entitled to qualified immunity at this time, and the Court will deny the motion to dismiss as to the claims against Defendant Ortiz in Count I.

### 2. Claim Against Defendant Ortiz for Failure to Protect

Next, as to Count II, Plaintiff alleges that Defendant Ortiz, among others,[7] violated his rights under the Eighth Amendment by failing to protect him from other inmates. (*Id*. ¶ 59–62.)

---

[7] Defendants do not move to dismiss the claims in Count II that are related to the other remaining Defendants.

13

To state a failure to protect claim under the Eighth Amendment, a plaintiff must "plead facts that show: (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian*, 696 F.3d at 367 (citing *Farmer*, 511 U.S. at 834). In this context, "deliberate indifference" is a subjective standard. *Bistrian*, 696 F.3d at 367. The official "must actually have known or been aware of the excessive risk to inmate safety" and it is "not sufficient that the official should have known of the risk." *Id.*

In his Complaint, Plaintiff alleges that his parents "contacted Defendant Ortiz about Mr. Toro's safety concerns, and the effect this pervasive danger was having on his mental and physical health." (ECF No. 9, ¶ 23.) One could reasonably infer that Plaintiff's parents relayed the threats described in the Complaint, that Plaintiff's roommates were the source of those threats, and that Plaintiff sought a different room assignment. Despite receiving that information, Defendant Ortiz did not transfer Plaintiff to a different room, which ultimately allowed Plaintiff's roommates to assault him. (*Id.* ¶¶ 59–61.) From these allegations, a jury could find that: (1) Plaintiff's room assignment posed a "substantial risk of serious harm,": (2) that Defendant Ortiz subjectively perceived that risk, (3) that Defendant Ortiz was deliberately indifferent to that risk, by failing to address the issue; and (4) that that deliberate indifference resulted in Plaintiff's harm, *i.e.*, the assault. *Bistrian*, 696 F.3d at 367.

Consequently, the Complaint states a claim for failure to protect under the Eighth Amendment. Likewise, under the first prong of the qualified immunity analysis, "taken in the light most favorable to" Plaintiff, the alleged facts show that Defendant Ortiz's "conduct violated a constitutional right." *Hamilton*, 322 F.3d at 786 (internal quotation marks omitted).

Once again, in moving to dismiss based on qualified immunity, it appears that Defendants assumed that they would succeed on the first prong and did not argue, in the alternative, as to whether Defendant Ortiz violated a clearly established right. (ECF No. 29-2, at 16–18.) Accordingly, Defendants have not met their burden to show that Defendant Ortiz is entitled to qualified immunity at this time, and the Court will deny the motion to dismiss as to the claims against Defendant Ortiz in Count II.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant in part the motion to dismiss and dismiss all of Plaintiff's FTCA claims, as well as his *Bivens* claims against Defendant Cabanes, for lack of jurisdiction.  The Court will also dismiss without prejudice Plaintiff's claims against Defendant Gomez for failure to state a claim.  Finally, the Court will deny Defendants' motion as to Defendant Ortiz.  An appropriate Order follows.

Dated:  October 25, 2022

/s/ Christine P. O'Hearn
**Christine P. O'Hearn**
**United States District Judge**